**ORTHO PHARMACEUTICAL CORPORATION, Plaintiff–Appellant,**

v.

**Herchel SMITH and American Home Products Corporation, Defendants/Cross–Appellants.**

**WYETH–AYERST LABORATORIES, Defendant–Appellee,**

v.

**JOHNSON & JOHNSON CORPORATION, Defendant–Appellant.**

Nos. 91–1147, 91–1157.

United States Court of Appeals, Federal Circuit.

March 19, 1992.

Stephen B. Judlowe, Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, argued, for plaintiff-appellant and defendant-appellant. With him on the brief were Dennis J. Mondolino and Marguerite Del Valle.

Paul H. Heller, Kenyon & Kenyon, New York City, argued, for defendants/cross-appellants and defendant-appellee. With him on the brief were Scott A. Wisser, Steven J. Lee, Jean Barish and Thomas J. Meloro. Also on the brief were Egon E. Berg and Robert Wiser, American Home Products Corporation, New York City, of counsel.

Before NIES, Chief Judge, COWEN, Senior Circuit Judge, and MICHEL, Circuit Judge.

NIES, Chief Judge.

Ortho Pharmaceutical Corporation and Johnson & Johnson Corporation appeal from the judgment of the United States District Court for the Eastern District of Pennsylvania holding claims 5, 19, 40, and 43 of U.S. Patent No. 3,959,322 (the '322 patent) not invalid. 18 USPQ2d 1977, 1990 W 121353 (1990). Appellants concede infringement. American Home Products Corporation and Dr. Herchel Smith cross-appeal from (1) the district court's denial of attorney fees pursuant to 35 U.S.C. § 285 (1988), and (2) the district court's refusal to modify the language of its permanent injunction. We affirm the district court's judgment in all respects.

## BACKGROUND [1]

The inventions in this case relate to steroids used in oral contraceptives. As stated in the district court's opinion, steroids comprise:

> a class of chemical compounds which has a distinctive four ring structure of three hexagonal rings of carbon atoms (the "six-membered rings") and one pentagonal ring (the "five member[ed] ring") all fused together in a substantially linear shape. The three hexagonal rings are lettered A, B and C; the five membered ring is D. The 17 carbon atoms which make up the four rings are numbered 1–17; a single carbon atom with 3 attached hydrogen atoms (a "methyl group") at position C–13 is numbered 18. The steroid molecule is basically a flat plane. The top side (above the plane) is called the "[B]" face; the bottom side (below the plane) is called the "[a]" face.

18 USPQ2d at 1978. The numbering of a steroid molecule can be understood by reference to the following diagram:

Ortho Pharmaceutical Corporation commenced this action in January, 1990, by filing a declaratory judgment action against American Home Products, the exclusive licensee of the '322 patent, Dr. Herchel Smith, a co-inventor and sole assignee of the '322 patent, and Wyeth–Ayerst Lab-

---

1. All statements of fact in the opinion are either district court findings not shown to be clearly erroneous or are undisputed between the parties.

oratories, a subsidiary of American Home Products engaged in the manufacture and sale of contraceptives, seeking to declare the '322 patent invalid.[2] AHP counterclaimed for infringement, naming Johnson & Johnson, Ortho's parent company, as an additional defendant. The district court issued a preliminary injunction against infringement and, at AHP's request, subsequently modified the injunction to enjoin Ortho from using any data generated from the making, using, or selling of norgestimate products, including "transmitting said data to any foreign affiliates or to any third party [or] permitting said foreign affiliates to use such data ... except [for submission to the FDA]." After a subsequent bench trial, the district court, *inter alia,* held: (1) Ortho had not proven claims 5, 19, 40, or 43 of the '322 patent invalid for double patenting or obvious from the prior art under 35 U.S.C. § 103 (1988); (2) Ortho had not proven inequitable conduct; and (3) AHP had proven infringement of claims 5, 19, 40 and 43 of the '322 patent.

The infringed claims and claim 1 upon which they depend, read as follows:[3]

**2.** For convenience we will refer to the parties at both the trial and appeal phases of this case as "Ortho", reflecting the infringing entity, and "AHP", reflecting the patentee.

**3.** Examining the claims reveals the term "gon-4-ene." A gon*ane* is a fully "saturated" steroid molecule, i.e., it contains only single bonds between adjacent carbon atoms. The suffix of the

1. A chemical compound having a gon-4-ene nucleus, said nucleus having attached thereto, in the 13-position, a poly-carbon-alkyl radical having 2 to about 16 carbon atoms, said compound containing at least 19 and up to a maximum of 40 carbon atoms in its carbon-carbon skeleton.

5. A compound of claim 1 which is 13$B$-ethyl-17$a$-ethynyl-17$B$-hydroxygon-4-en-3-one.

19. A compound of claim 1 which is 13$B$-ethyl-17$a$-ethynyl-17$B$-hydroxygon-4-en-3-one, acetate.

40. A compound of claim 1 which is a 13$B$-ethyl-17-ethynyl-17$B$-hydroxy steroid or its 17-acetate having a gon-4-ene carbon-carbon skeleton.

43. A compound of claim 1 which is a 13$B$-ethyl-17$a$-ethynyl-17$B$-hydroxy steroid or its 17-acetate having a gon-4-ene nucleus and a 3-substituent selected from the group consisting of oxo, hydroxy, and a group convertible thereto by hydrolysis.

The steroids of claims 5, 19, 40 and 43 of AHP's '322 patent are illustrated in the following four diagrams:

base name indicates the degree of unsaturation: -ane is full saturation, -ene is a double bond, -yne is a triple bond. A gon-4-ene, therefore, has an identical base structure to a gonane except that there is a double bond at the indicated position, i.e., between carbon atoms 4 and 5.

| | | |
|---|---|---|
| '322 claim 5<br>(A151–208) | | gon-4-ene |
| '322 claim 19<br>(A151–208) | | gon-4-ene |
| '322 claim 40<br>(A151–208) | R = OH, OAc | gon-4-ene |
| '322 claim 43<br>(A151–208) | R = OH, OAc<br><br>R'= OH, =O, or group convertible thereto by hydrolysis | gon-4-ene |

The steroid of claim 5 is contained in AHP's commercial contraceptive product, "norgestrel."

Ortho manufactures the infringing steroid, "norgestimate," which is depicted in the diagram below:

Ortho admitted infringement of claims 40 and 43 (but contested their validity). The district court found claims 5 and 19 infringed under the doctrine of equivalents because Ortho's norgestimate had been shown to break down in the body to, among other things, norgestrel (the product of claim 5) and norgestrel acetate (the product of claim 19), and those two breakdown products are primarily responsible for the biological activity of norgestimate.[4] This holding is not appealed.

The district court additionally found that Ortho's infringement was not willful or otherwise exceptional, and hence, attorney fees were not warranted. In that respect, the court found Ortho had received and relied upon opinions from patent counsel (February 6, 1976 and April 18, 1977) which indicated that both the '322 and its parent patent, U.S. Patent No. 3,850,911 (the '911

---

**4.** A drug which makes such an inner body transformation is often referred to as a "pro-drug."

patent), were invalid and unenforceable. 18 USPQ2d at 1987.

AHP sought no damages for the infringement but obtained an injunction. Pursuant thereto, Ortho was enjoined from "making, using or selling any product containing the chemical compound norgestimate in violation of [AHP's] '322 Patent UNTIL the expiration of [the '322 patent] in November of 1991." An exception to this prohibition is that Ortho "MAY engage in activities with respect to norgestimate RELATED SOLELY for uses reasonably related to obtaining FDA approval, as provided by 35 U.S.C. § 271(e)(1)." [5] The district court, in spite of explicitly enjoining Ortho from using or transmitting to its foreign affiliates any data generated from the making, using, or selling of norgestimate-containing products in the preliminary injunction, refused AHP's request to include such a prohibition in the permanent injunction. The court also denied AHP's request to extend the above mentioned prohibition for two years past the date of expiration of the '322 patent.

### ISSUES

1. Is the '322 patent invalid for obviousness-type double patenting? Despite the expiration of the patent during the appeal, this issue is not moot because of its bearing on other issues.

2. Did the district court clearly err in finding that Ortho's infringement was not willful?

3. Did the trial court abuse its discretion by refusing to enjoin Ortho from using or transmitting infringement generated data and by refusing to extend this prohibition for two years beyond the term of the '322 patent?

### DISCUSSION

I. *Ortho's Appeal—Double Patenting*

■ The patent statute by 35 U.S.C. § 101 (1988) precludes a patentee from ob-

taining more than one patent on the same invention. *In re Longi,* 759 F.2d 887, 892, 225 USPQ 645, 648 (Fed.Cir.1985). By interpretation, this prohibition has been extended to preclude a second patent on an invention which "would have been obvious from the subject matter of the claims in the first patent, in light of the prior art." *Id.* at 893, 225 USPQ at 648. A second issued patent may not improperly extend the term of protection for an earlier patented invention. *In re Braat,* 937 F.2d 589, 592, 19 USPQ2d 1289, 1291–92 (Fed.Cir.1991). These concepts are encompassed within the rubric of "double patenting." *See In re Braithwaite,* 379 F.2d 594, 601, 54 CCPA 1589, 154 USPQ 29, 34 (1967). At issue in this case is obviousness-type double patenting.

Unlike "same-invention" double patenting, obviousness-type double patenting can be overcome by filing a terminal disclaimer. As stated in section 1490 of the Manual of Patent Examining Procedure:

> A disclaimer is a statement filed by an owner ... of a patent or of a patent to be granted, in which said owner relinquishes certain legal rights to the patent.... [A] terminal disclaimer under 37 CFR 1.321(a) and (b) [is] used to disclaim or dedicate a portion or the entire term of all of the claims of a patent.

By disclaiming that portion of the second patent which would extend beyond the expiration of the first, the patentee gives up any extension of patent protection that might have resulted. *Braithwaite,* 379 F.2d at 601, 154 USPQ at 35.

Initial patent applications involved in the present case were filed in England, and later, corresponding applications were filed in the United States. In October, 1962, an omnibus continuation-in-part application containing over 450 working examples was filed in the United States. This application

---

5. Section 271(e)(1) of title 35 states:
"It shall not be an act of infringement to make, use, or sell a patented invention ... solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use or sale of drugs or veterinary biological products."
35 U.S.C. § 271(e)(1) (1988).

eventually issued as the '911 patent, which expired on November 26, 1991.

During prosecution of the '911 patent, the patent examiner initially required the applicant to restrict the claimed invention to one of seven subject matter categories, denominated Groups I–VII. Applicant elected to proceed with compounds in Group I. Subsequently, the examiner required a further restriction of the elected claims to one of six additional groups.

The '911 patent is the parent to the '322 patent, and the claims of the '322 patent are a subgenus of the generic claims of the '911 patent. The term of the '322 patent was terminally disclaimed "beyond 11/26/91," the expiration date of the '911 patent.

Four more applications, each directed to one of the groups of restricted subject matter, were filed in 1965 and 1966, resulting in U.S. Patents Nos. 3,407,217, 3,547,909, 3,391,165 and 3,417,081 (the '217, '909, '165 and '081 patents, respectively). The '911 patent is a parent to each of those patents. Another application filed in 1966, which was not the result of a restriction requirement, issued as U.S. Patent No. 3,519,714 (the '714 patent). Still another application, filed in May of 1962, prior to the filing of the application for the '911 patent, resulted in U.S. Patent No. 3,502,699 (the '699 patent). The types of compounds claimed in the '911, '909, '081, '217, '165, '714 and '699 patents are diagrammed in Figure 1 appended hereto.

Ortho unsuccessfully argued in the district court that the '322 patent was invalid for obviousness-type double patenting in two ways: "indirectly" and "directly." Ortho's *indirect* argument is that: (1) the '911 patent should be held invalid for double patenting over the '217, '909, '165,- '081, and '714 patents; (2) the '322 patent is terminally disclaimed to expire on the same date as the '911 patent; and (3) therefore, the '322 patent should be deemed invalid also. Ortho's *direct* argument is that the claims of the '322 patent would have been obvious from the claims of the '081, '909 and '699 patents.

In rejecting Ortho's indirect argument, the district court found that "[t]he terminal disclaimer voluntarily filed in the prosecution of the '322 patent merely fixes an earlier date certain upon which that patent expires—November 26, 1991," and that "the disclaimer does not operate to tie the validity of the '322 patent to the validity of the '911 patent or any other patent." 18 USPQ2d at 1982. Therefore, the court concluded, "even if the '911 patent were invalidated for double patenting, the '322 patent would not be invalidated as a result." *Id.* The court added that, even if the validity of the '322 patent *did* depend on the validity of '911, the '911 patent is not invalid.

■ On appeal, Ortho continues to argue that the '322 patent is "indirectly" invalid. Ortho offers no persuasive legal support for this theory. In essence, Ortho seems to be contending that, by filing a terminal disclaimer in the '322 patent, the applicants admit not only that the '322 claims are an obvious variation of the '911 claims but, also, that they are an obvious variation of any claims in a third patent from which the '911 claims are themselves invalid for double patenting. However, the critical premise to this argument (i.e., by filing the terminal disclaimer, the '322 applicants admitted to obviousness-type double patenting) is wrong. The terminal disclaimer filed in '322 did no more than give up the portion of the patent term beyond the expiration date of the '911 patent. It did not concede double patenting with relation to any other patent.

Ortho relied on the decision of the district court in *Quad Envtl. Technologies Corp. v. Union Sanitary Dist.*, 17 USPQ2d 1667, 1990 WL 288711 (N.D.Cal.1990), which held that the terminal disclaimer filed there was an admission which estopped the patentee from arguing nonobviousness. However, shortly after oral argument in the present case, we reversed the district court decision in *Quad*, stating:

> In legal principle, the filing of a terminal disclaimer simply serves the statutory function of removing the rejection of double patenting, and raises neither presumption nor estoppel on the merits of

the rejection. It is improper to convert this simple expedient of "obviation" into an admission or acquiescence or estoppel on the merits. *Quad Envtl. Technologies Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 874, 20 USPQ2d 1392, 1394–95 (Fed.Cir.1991). Thus, Ortho's "indirect" attack must fail.

With respect to its direct attack, Ortho seeks to have claim 1 of the '322 patent, which AHP did not assert in this case, declared invalid for double patenting in view of the '699 claims. Citing *Gerber Garment Technology v. Lectra Systems*, 916 F.2d 683, 686, 16 USPQ2d 1436, 1439 (Fed.Cir.1990), Ortho argues that, if claim 1 is invalid for double patenting, all claims of the '322 patent are invalid.

In *Gerber Garment*, the district court granted a motion for summary judgment holding that two claims in the '154 patent were invalid for double patenting. On appeal, this court affirmed stating that the district court's "[i]nvalidation of the '154 patent ... was ... appropriate." *Gerber Garment*, 916 F.2d at 689, 16 USPQ2d at 1441. Ortho argues that use of the phrase "invalidation of the '154 patent" in the *Gerber Garment* opinion means that, if one claim is invalid for double patenting, all claims residing in the same patent are invalid. However, that issue was not present in *Gerber Garment*. No claim other than the two claims charged to be infringed were involved in the double patenting issue and *each* was invalid for double patenting. Thus, *Gerber Garment* does not control this case.

■ Where obviousness-type double patenting is recognized before issuance of a patent, the price extracted for obtaining the second patent is disclaimer of part of the term of protection for all claims in the patent, *i.e.*, even those claims which standing alone would not run afoul of the rule against double patenting. *See, Ex parte Kumagai*, 9 USPQ2d 1642, 1646 (Bd.Pat. App. & Int.1988). However, we conclude that this unitary treatment of the claims with respect to their term of protection does not carry over into an obviousness-type double patenting attack on the claims

after the patent is issued. To do so would run counter to the requirement that validity of each claim must be evaluated individually as provided in 35 U.S.C. § 282:

> Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim.

35 U.S.C. § 282 (1988). We have held that this means "a party challenging the validity of a claim, absent a pretrial agreement or stipulation, must submit evidence supporting a conclusion of invalidity of each claim the challenger seeks to destroy." *Shelcore, Inc. v. Durham Indus.*, 745 F.2d 621, 625, 223 USPQ 584, 586–87 (Fed.Cir. 1984). We conclude that the double patenting challenge must be evaluated, like any other ground of invalidity, against individual claims. *Ashland Oil, Inc. v. Delta Oil Prods. Corp.*, 685 F.2d 175, 178, 216 USPQ 857, 859 (7th Cir.1982), *cert. denied*, 460 U.S. 1081, 103 S.Ct. 1769, 76 L.Ed.2d 343 (1983). Invalidity of a claim on any ground brings into play 35 U.S.C. § 253 (1988): "Whenever, without any deceptive intention, a claim of a patent is invalid the remaining claims shall not thereby be rendered invalid." Reading these provisions together, we conclude that the invalidity of '322 claim 1 because of double patenting, even if true, does not necessarily require the invalidation of claims 5, 19, 40, and 43. Ortho has not attempted to show that the four claims at issue are themselves obvious variations of the '699 claims. We, therefore, do not address Ortho's extensive arguments respecting the invalidity of claim 1 of the '322 patent.

■ Turning to the '081 and '909 patents, Ortho argued before the district court that claims of those patents render claim 43 of '322 invalid for double patenting. But the district court found the claimed compounds of '081 and '909 "are not gon–4–enes and were considered by the Patent Office to be independent and distinct from the gon–4–enes of [claim 43 and the other asserted claims of] the '322 patent." 18

USPQ2d at 1982. Ortho has not shown that those determinations are erroneous.

The claimed compounds of the '081 patent are gon–5–enes and gon–5(10)–enes; the '909 patent claims are directed to gona–2,5(10)–dienes. The gon–4–ene compounds of claim 43 simply do not embrace those compounds; nor are they mere obvious variations of them. In the latter respect, the district court found that steroid hormones exhibit "structurally specific" activity, meaning that their ability to work in the human body depends on how well their shape corresponds to the shape of cellular receptors. In the 1950s and early 1960s, when these compounds were being developed, one could not predict the effect of small structural changes on the biological activity of steroid hormones. 18 USPQ2d at 1979. Given the structure and properties of the components claimed in '081 and '909, there would have been no suggestion in the art (and, hence, it would not have been obvious) to modify those structures in order to achieve the compounds of '322 claims 5, 19, 40, and 43 having properties similar to those of '081 and '909.

■ Ortho argues that the '322 specification includes examples of compounds which are covered by the '081 and '909 claims. One such example discloses a mixture of a gon–5–ene and a gon–5(10)–ene; another discloses a 2,5(10)–diene. When subjected to certain reactions, per the '322 specification, those compounds yield the gon–4–ene of '322 claim 43. Ortho argues:

> AHP thus exemplified the compounds of claim 43 of the '322 patent by resorting to species claimed in two earlier issued patents. By so doing, the patentees admitted that the compounds claimed in the '081 and '909 patents are also claimed in the '322 patent.

That argument is not persuasive. It is the claims, not the specification, that define an invention. See *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957, 220 USPQ 592, 597 (Fed.Cir.1983), *cert. denied*, 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984). And it is the claims that are compared when assessing double patenting. While the *starting materials* in the two examples

(170 and 255) of '322 may be the type of components claimed in '081 and '909, the '322 compounds *claimed* in claim 43 are simply not the same as or obvious variations of the compounds *claimed* by those two patents. In that regard, AHP's argument in response to Ortho is compelling:

> Claim 43 was added to the application for the '322 patent during prosecution (as application claim 54). Like all claims of the '322 patent, claim 43 recites compounds having a *gon–4–ene* carbon-to-carbon nucleus. The 3–substituent of the compounds of claim 43 was defined as being "selected from the group consisting of oxo, hydroxy, and a group convertible thereto by hydrolysis." In the amendment adding the claim, the Applicants stated that seven Examples in the specification supported the claim. Some of these Examples show compounds having a 3–substituent which is a group convertible to oxo or hydroxy by hydrolysis. Ortho alleges that citation of two of these Examples constitutes an admission "that the compounds claimed in the '081 and '909 patents are also claimed in the '322 patent." (Ortho Br. at 21–22). However, the compounds of these Examples are *not* gon–4–ene steroids and are not within the scope of the claim. (A5828). The Examples merely provide one of ordinary skill in the art with an adequate written description and an enabling disclosure of how to make and use compounds having the *3–substituent* of claim 43.

(Footnote omitted; emphasis in original.)

In light of the above analysis, we hold that the district correctly refused to invalidate claims 5, 19, 40 and 43 of the '322 patent for either "indirect" or "direct" double patenting.

## II. *AHP's Cross-appeal*

### A. Willful Infringement

AHP appeals the district court's denial of attorney fees and costs under 35 U.S.C. § 285 which provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." AHP asserts that the district court's finding that

Ortho's infringement was not willful is clearly erroneous and should be reversed, thereby providing a basis for entitlement to attorney fees. *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543, 16 USPQ2d 1622, 1626 (Fed.Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991).

■ The issue of willful infringement is resolved by evaluating the totality of the surrounding circumstances. *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1483, 16 USPQ2d 1093, 1101 (Fed.Cir.1990); *Gustafson, Inc. v. Intersystems Indus. Prods.*, 897 F.2d 508, 510, 13 USPQ2d 1972, 1974 (Fed.Cir.1990). Where an infringer has actual notice of a patentee's rights, the infringer has an affirmative duty of due care, *Avia Group Int'l Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1566, 7 USPQ2d 1548, 1555 (Fed.Cir.1988), which normally includes the duty to seek and obtain competent legal advice from counsel regarding the potential infringement. *Ryco Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428, 8 USPQ2d 1323, 1332 (Fed.Cir.1988); *Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1084, 4 USPQ2d 1044, 1051 (Fed.Cir.1987), *cert. denied,* 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 987 (1988).

■ Whether infringement is "willful" is by definition a question of the infringer's intent. *Gustafson*, 897 F.2d at 510–11, 13 USPQ2d at 1974. *See also King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 867, 226 USPQ 402, 412 (Fed.Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986) (defendant's reasonable belief that its activities fell within its own patent claims, although irrelevant in an infringement analysis, is a factor in determining intent with respect to willful infringement). While an opinion of counsel letter is an important factor in determining the willfulness of infringement, its importance does not depend upon its legal correctness. Indeed, the question arises only where counsel was wrong. Rather, counsel's opinion must be thorough enough, as combined with other factors, to instill a belief in the infringer that a court might

reasonably hold the patent is invalid, not infringed, or unenforceable. *Cf. Underwater Devices Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1390, 219 USPQ 569, 576–577 (Fed.Cir.1983) (infringement defendant may show that it was justified in relying on opinion of counsel letter despite negative inferences arising from circumstances, i.e., letter provided by non-patent, in-house counsel). Thus, Ortho's intent and reasonable beliefs are the primary focus of a willful infringement inquiry. *See Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1565, 219 USPQ 377, 388 (Fed.Cir.1983) ("The court must determine ... that the infringer had no reasonable basis for believing that it had a right to do the acts.").

■ The district court, in finding no willful infringement, concluded that Ortho obtained and reasonably relied upon opinion letters rendered by counsel. 18 USPQ2d at 1987. This finding is not clearly erroneous. Ortho's opinion letters were obtained from experienced patent counsel. The first letter relates to the '911 patent and thoroughly discusses reasons supporting counsel's conclusion of invalidity. This letter also makes reference to potential divisional applications, concluding that any claims in the divisional applications broad enough to include Ortho's product would be invalid for the same reasons as the '911 patent.

Counsel's second letter relates to both the '911 and the '322 patents, and concludes that the only claims broad enough to include Ortho's products are invalid. While the opinion states that certain narrow claims of the '322 patent are valid, it indicates that these claims are specifically drawn to norgestrel and do not include Ortho's product.

AHP points to two "deficiencies" in the opinion letters as the basis for claiming error by the district court. First, AHP alleges that the letters do not contain a non-infringement analysis under the doctrine of equivalents. Second, AHP claims that the letters acknowledge potential infringement due to the conversion of Ortho's norgestimate into norgestrel and norgestrel acetate within the body.

AHP cites *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 11 USPQ2d 1321 (Fed. Cir.1989), *cert. denied*, 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 747 (1990), to support its proposition that lack of analysis under the doctrine of equivalents carries great weight in a willfulness determination. In *Datascope*, this court reversed the district court's finding of non-willfulness noting the conclusory nature of counsel's remarks. *Id.* at 828–29, 11 USPQ2d at 1327. The character of the letter on its face defeated the *Datascope* infringer's claim to having had a reasonable belief that it was not infringing a valid patent, not the absence of an equivalence analysis *per se.*

Similarly, AHP's view that the opinion letters indicate potential infringement by reason of "pro-drug" conversion does not compel a finding of willfulness. A party is not guilty of ignoring patent rights because it resolves a close question of infringement in its favor.

The analysis of case law provided by Ortho's counsel, whether technically accurate or not, could have led Ortho to believe that its "pro-drug" conversion was not an infringement. In light of the letter's overall tone, its discussion of case law, its analysis of the particular facts and its reference to inequitable conduct, we cannot say the district court clearly erred in finding that Ortho reasonably relied upon opinions by its counsel and, thus, Ortho's infringement was not willful. Therefore, the district court's denial of AHP's request for attorney fees was not an abuse of discretion and is affirmed.

### B. Injunction

AHP appeals the district court's denial of AHP's motion to amend the permanent injunction (1) to specifically prohibit Ortho from using or transmitting data generated by Ortho's making, using, or selling of norgestimate and (2) to extend this prohibition two years beyond the term of the '322 patent. AHP contends the current injunction does not provide sufficient protection and therefore the district court's denial of its motion to amend the injunction was in error.

As relief for patent infringement, a district court may grant an injunction "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283 (1988). This statute grants the district courts broad discretion in determining whether the facts of a case warrant an injunction and in determining the scope of the injunctive relief. *See Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1548, 3 USPQ2d 1412, 1420 (Fed.Cir.1987). Hence, the grant, denial, or modification of an injunction under 35 U.S.C. § 283 is reviewable under an abuse of discretion standard. *Windsurfing Int'l, Inc. v. AMF Inc.*, 782 F.2d 995, 1002, 228 USPQ 562, 567 (Fed. Cir.), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986).

AHP asserts that Ortho is using data obtained through Ortho's making, using, or selling of norgestimate to promote the sale of its norgestimate-containing products upon expiration of the '322 patent and to obtain overseas approval to market its norgestimate-containing oral contraceptives. Anticipating a defense under section 271(e)(1), AHP argues that section 271 does not protect Ortho because Ortho is using the data for purposes other than obtaining FDA approval. Ortho responds that its acquisition of the data was solely for FDA approval and thus any subsequent uses are protected by section 271(e)(1). However, because we are reviewing the scope of the injunction, not whether certain acts constitute infringement in light of section 271(e)(1), we do not reach these arguments. The questions before us are whether the district court abused its discretion in refusing (1) to revise the injunction to specifically prohibit the use of the data in question and (2) to extend the above prohibition two years beyond the '322 patent's expiration.

The patent statute defines infringement as making, using, or selling the patented invention. 35 U.S.C. § 271(a). AHP seeks to have us rule that Ortho's transmission of data is an act of infringement. However, we decline to address that issue. As

it stands, the injunction clearly prohibits infringement of the '322 patent by Ortho. If we assume the conduct to which AHP objects is infringement, then the conduct is prohibited under the current injunction. On the other hand, if the acts are not infringement, it is unclear whether the district judge has discretionary power under section 283 to issue the injunction covering acts not classified as infringement. Assuming, without deciding, he does have that power, AHP would have to demonstrate that the district court abused its discretion in failing to revise the injunction. However, AHP does not argue that issue but argues only that the acts respecting the data constitute infringement, a question which is properly addressed in the context of contempt proceedings.

With respect to the district court's refusal to extend the injunction, at least as it applies to Ortho's use of the data at issue, to cover a period two years beyond the term of the '322 patent, AHP again never contends that the district court abused its discretion. Instead, AHP merely asserts, as it did to the trial court, that Ortho should not be allowed to profit by its infringement.

As support for its argument, AHP cites *Pfizer, Inc. v. International Rectifier Corp.*, 217 USPQ 157 (C.D.Cal.1982) and *Eli Lilly & Co. v. Medtronic, Inc.*, 735 F.Supp. 652, 14 USPQ2d 1352 (E.D.Pa.), *rev'd and vacated on other grounds*, 915 F.2d 670, 16 USPQ2d 2020 (Fed.Cir.1990) to illustrate that courts have enjoined the use of data to prevent an infringing party from profiting from its infringement. Neither of these cases presents an injunction which extended beyond the life of the infringed patent.

In *Eli Lilly* the district court held the infringer in contempt for post-injunction infringement. The portion of *Eli Lilly* cited by AHP is merely a recognition that "[r]easonable restraints ... placed on an infringer to eliminate the consequences of past bad acts and to prevent further encroachment on the [subject] patent" do not violate the First Amendment. *Eli Lilly*, 735 F.Supp. at 662, 14 USPQ2d at 1360. This authority in no way suggests that the district court in the present case abused its discretion.

In *Pfizer* the district court held the infringer in contempt for violating an earlier injunction which prohibited the infringer from directly or indirectly making, using or selling the patented invention. As a remedy for the contempt, the district court, recognizing that the infringer had improved its marketing position by six months to one and a half years, ordered the infringer to destroy, before the expiration of the patent, all data obtained in violation of the injunction. 217 USPQ at 162–63. *Pfizer* does not suggest that the district court abused its discretion by refusing to extend the injunction beyond the term of the patent. The "profit" erased in *Pfizer* was that acquired through contemptuous disregard for the district court's injunction.

AHP has not pointed to any evidence of record or to any persuasive case law which demonstrates that the district court abused its discretion in refusing to revise the permanent injunction in this case. Therefore, we affirm the district court's denial of AHP's motion to amend the permanent injunction.

## CONCLUSION

In appeal no. 91–1147 we hold the district court correctly refused to hold claims 5, 19, 40, and 43 of the '322 patent invalid. In appeal no. 91–1157 we hold the district court did not abuse its discretion in denying costs and attorney fees to cross-appellants and in refusing to alter the terms of the permanent injunction.

AFFIRMED.

APPENDIX

| '911 patent (A63-150) | | genus |
| --- | --- | --- |
| '909 patent (A214-228) | | gona-2,5(10)-diene |
| '081 patent (A209-213) | | gon-5(6) and 5(10)-enes (mixture) |
| '217 patent (A308-332) | | 8-iso-gonane |
| '165 patent (A229-239) | | gon-5(10)-ene |
| '714 patent (A240-307) | | gona-1,3,5(10) triene |
| '699 patent (A333-346) | | 9-hydroxy-gon-4-ene-3,17-dione (species) |

Figure 1.