**DUNHALL PHARMACEUTICALS, INC., Plaintiff,**

v.

**DISCUS DENTAL, INC., et al., Defendants.**

Nos. CV97–7408–WDK(AIJx), CV97–7418–WDX(AIJx).

United States District Court, C.D. California.

Jan. 27, 1998.

## Background

KELLER, District Judge.

In the underlying case, plaintiff has filed consolidated actions against defendants alleging, among other things, that they have willfully infringed plaintiff's United States Reissue Patent No. Re. 34,196 (the '196 patent). In response, defendants have asserted in part that they had a good faith belief that their product was not infringing and/or that the '196 patent was invalid or unenforceable, based in part on advice provided to them by the Christie, Parker & Hale law firm. Plaintiff thereafter sought broad discovery regarding the advice of counsel. To much of this discovery, defendants objected based on attorney-client and work product privileges. Plaintiff moved to compel the production of all documents, otherwise privileged under the attorney-client privilege and work product doctrines, relating to infringement, validity, and enforceability. Defendants opposed the motion, arguing that the waiver of the privileges is limited and does not reach certain evidence under defense counsel's control. Magistrate Judge Ann I. Jones ruled in defendants' favor, finding that there was not a broad subject matter waiver created by defendants' reliance on advice of counsel defense.

## Discussion

The parties do not dispute that asserting the advice of counsel defense acts as a waiver of the attorney-client and work product privileges. However, the parties strongly disagree over the scope of that waiver. Plaintiff argues that the waiver is broad, and encompasses anything relating to the subject matter of the asserted defense—in this case infringement, validity, and enforceability. Plaintiff contends that the waiver includes any document, or other evidence relating to infringement, validity, or enforceability, whenever created and regardless of whether communicated by counsel to defendants. For example, defendants' counsel would be required to disclose their work product files to the full extent that they reflected any work relating to the subject matter of the defense. Defendants argue that the scope of the waiver is much more limited, and that they need only to produce and testify to the legal opinions actually communicated to defendants. Under this narrow waiver, defendants' counsel would not be required to produce, or testify regarding, any work product that was not actually communicated to defendants.

In order to decide the disputed issue, it is helpful to examine the Magistrate's opinion to determine what areas of the waiver are not contested. Pursuant to the Magistrate's ruling:

> Defendants ... have clearly waived the attorney client privilege as to all communications between counsel and client regarding the advice actually given.....

> In addition, the scope of the waiver encompasses materials beyond the opinions themselves. If there are otherwise privileged documents in the *client's* files that refer or relate to counsel's opinion, *e.g,* that refer or reflect an absence of reliance by the Defendants on the advice provided by counsel, those documents would be highly relevant and no longer privileged.

> Further, the Defendants have waived the privilege as to all materials or communications by the Defendants to the attorney that was used or considered in preparing the opinion.

Mot.Exh. 1, 10:15–11:12 (citations and footnote omitted).

However, the Magistrate limited the waiver by ruling that:

> The waiver does not, however, extend to attorney work product or documents upon which the attorney relied that were not

disclosed or otherwise communicated to the client.

Mot.Exh. 1, 11:12–12:1 (citations omitted).

■ The limitation imposed on the scope of the waiver by the Magistrate essentially exempts work product from discovery. Any evidence not communicated to the client, and therefore not subject to the attorney-client privilege, is not discoverable. Therefore, evidence created during the course of the representation, but not communicated to the client, and therefore only protected by the work product doctrine, is exempt from discovery.

Deciding whether this limitation is proper is made more difficult by the fact that there exists no binding precedent. As both sides attempt to argue in their favor, the precedent in this case consists almost entirely of the decisions of other district courts. As discussed by the Magistrate, no Federal Circuit precedent exists on this question. Op. 9:25. To support a limited waiver, the Magistrate primarily cites *Steelcase, Inc. v. Haworth, Inc.*, 954 F.Supp. 1195 (W.D.Mich. 1997). However, by so ruling the Magistrate rejects several other district court rulings finding that the reliance on counsel defense creates a broad subject matter waiver of both the attorney-client and work product privileges.

The rationale behind *Steelcase* and similar cases is that the Federal Circuit has made clear that, in a willful infringement analysis, the issue is the state of mind of the alleged infringer. *See Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 944 (Fed.Cir.1992). Therefore, the reasoning goes that only those materials which are clearly communicated by counsel to the client are relevant in an analysis of the client's state of mind. Because documents and other evidence which are not communicated do not reflect on the client's state of mind, they are not relevant and not discoverable. *See Steelcase*, 954 F.Supp. at 1199. Thus, according to *Steelcase*, work product of an attorney is not discoverable absent evidence that is was communicated to the client. *Id.* at 1200.

The Magistrate followed *Steelcase* and expressly rejected *Mushroom Associates v. Monterey Mushrooms, Inc.*, 1992 WL 442892 (N.D.Cal.1992), and other similar cases, including *Hoover Universal, Inc. v. Graham Packaging Corp.*, 44 USPQ2d 1596 (C.D.Cal. 1996), and *Frazier Industrial Co. Inc. v. Advance Storage Products*, 33 USPQ2d 1702 (C.D.Cal.1994). These cases establish a more broad waiver, finding that, although the state of mind of the client is the issue, the basis and facts surrounding the advice provided by counsel are relevant in the process of investigating that state of mind.

One of the primary considerations in these cases is the different standards that apply to admissibility and discoverability. By placing the opinion of an attorney at issue, the defendant creates a right to discovery of certain materials, even if those materials are not themselves admissible. As Judge Wardlaw made clear in *Hoover:*

> The law is clear that the state of mind of the alleged infringer is the relevant issue in a willfulness charge. The standard for discovery is broader than that for admissibility: the material must "appear [ ] reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The Court finds that Hoover is entitled to discovery of a broader range of documents than may ultimately prove admissible at trial. The internal memoranda and other work product of the law firms that prepared the opinion letters in this matter could reveal circumstantial evidence of conflicting or contradictory opinions that were in fact communicated to Graham by counsel. Hoover is entitled to discover such circumstantial evidence and to cross-examine Graham and Graham's counsel about its possible relevance. At this point, the Court cannot state definitively that only documents clearly communicated to Graham by its counsel could ever lead to relevant and admissible evidence as to Graham's state of mind at the time of the alleged infringement.

*Hoover*, 44 USPQ2d at 1598 (internal citations omitted).

A narrowly circumscribed waiver, at the discovery stage, creates a danger of a defendant utilizing favorable opinion letters while allowing unfavorable evidence to languish in their attorney's files under the protection of the work product doctrine. *Steelcase* over-

emphasizes the Federal Circuit's limitations on admissibility, and fails to take into account Rule 26(b)(1)'s broader reach at the discovery phase of litigation. While negative evidence contained in an attorney's files may not ultimately reflect upon the client's state of mind, and will therefore not be admissible as evidence of willfulness, that evidence could very well lead to the discovery of relevant and admissible evidence of the client's state of mind that might not otherwise come to light. If the attorney's files contain evidence contradicting or questioning the opinion relied on by the client, the plaintiff has a right to know about such evidence in order to fully question defendants and their counsel regarding that evidence, disclosure to the client, and other related issues.

Additionally, focusing solely on whether evidence was clearly communicated by the attorney to the client can obscure the fact that evidence which does not facially reflect communication to the client may nonetheless be relevant to showing the client's state of mind. This is so simply because negative evidence contained in the attorney's files raises the reasonable circumstantial inference that the client was somehow appraised of the negative opinions. The court in *Electro Scientific Industries, Inc. v. General Scanning, Inc.*, 175 F.R.D. 539, 1997 U.S.Dist. LEXIS 14266 (N.D.Cal.1997), explained the rationale behind avoiding a formalistic distinction between evidence that was communicated to the client, and evidence that was not:

> Certainly it would not be rational to assume that every thing in counsel's files reached the client, or that counsel communicated to the client all of what he or she really thought, but it would be comparably irrational to assume that there could be no relationship between what counsel really thought (as reflected in her private papers) and what she in fact communicated to her client. In this important sense, evidence about what really was in the lawyer's mind could be quite relevant to the issue of what really was in the client's mind.

*Id.* at 545.

Finally, the Court finds that making a distinction based only on whether something was communicated creates a potential difficulty in classifying evidence. Evidence in an attorney's file is not always going to clearly reflect whether its contents were communicated to the client. For example, an attorney's personal notes showing negative opinions would not be classified as a communication, but may well reflect discussions that the attorney had with the client. As the *Electro Scientific* court explained:

> Moreover, it is impossible to foresee all the kinds of evidence that might be found in the kind of work product documents that are in issue here (i.e., documents that do not directly reflect or advert to communications with the client), or all the kinds of ways that the contents of such documents might be used to shed reliable light on the issue of whether the defendant received additional opinions (perhaps orally) that were inconsistent with the opinions reflected in the disclosed opinion letter.

*Id.* at 545.

Therefore, the Court finds that the Magistrate was not correct in focusing on whether evidence was communicated to the client, thereby barring discovery of work product materials. Instead, the Court holds that the principles of discovery mandate a waiver of the work product doctrine. The remaining question is the scope and temporal limitations of the work product waiver.

In oral argument, the defense proposed a limited-scope waiver of the work product doctrine rather than a subject-matter waiver. With such a waiver, the defense would produce only that evidence that it determines is "materially contradictory" to the relied-upon opinion letters. Plaintiff argues, and the Court agrees, that the waiver of work product protection does not involve such "gatekeeping" by defense counsel. Instead, the scope of the waiver extends, and is limited, to the subject matter of the defense.

Regarding the temporal limitation, plaintiff seeks an ongoing waiver of work product protection, including any evidence, whenever created, relating to validity, infringement, or enforceability. Mot. 10:1–2. Such a waiver is too broad. Although the Court recognizes plaintiff's valid interest in discovering all work product relating to the subject matter of the asserted defense, that interest must be balanced with defendants' countervailing in-

terest in protecting their work product. Although defendants have waived work product protection by asserting the advice of counsel defense, that waiver is not absolute. Once the lawsuit is filed, the waiver of work product protection ends. This temporal limitation follows from the enhanced interest in protecting against disclosure of trial strategy and planning. Following the filing of the lawsuit, defense counsel is engaged in critical trial preparation, often including analysis of the weaknesses of their client's case. Such analysis, while likely related to the subject matter of the asserted defense, is fundamentally different from a similar pre-litigation analysis. In comparison to work product produced prior to the filing of the lawsuit, litigation-related work product deserves greater protection. Because the Court finds that the balance of competing interests shifts at the time the lawsuit is filed, it rejects plaintiff's contention that the waiver should extend beyond the date that the lawsuit was filed.

### Conclusion

Pursuant to the Magistrate's ruling, the Court finds a subject-matter waiver of the attorney-client privilege. This includes any evidence relating to infringement, validity, and/or enforceability that was communicated between the attorney and client, throughout the entire time period of the alleged willful infringement.

Regarding work product, the Court finds a more limited waiver. However, the Magistrate limited the waiver too severely. The assertion of the advice of counsel defense waives the work product privilege with respect to the subject matter of the asserted defense, up to the time that the lawsuit was filed. This waiver includes any evidence relating to the subject matter of the asserted defense, whether or not communicated to the defendants.

In all aspects that it does not disagree with this Order, the Magistrate's ruling is affirmed.

**IT IS SO ORDERED.**

### Order Re Discovery

JONES, United States Magistrate Judge.

### FACTUAL BACKGROUND

Plaintiff Dunhall Pharmaceuticals, Inc. ("Dunhall") has filed consolidated actions against Defendants Discus Dental, Inc., Interdent, Inc., Robert Hayman and Kenneth Rosenblood alleging, *inter alia*, that they have willfully infringed plaintiff's United States Reissue Patent No. Re. 34,196 (the '196 patent). In response to Dunhall's claims of willful infringement, the Defendants have asserted that they had a good faith belief that their product was not infringing and/or that the '196 patent was invalid or unenforceable, based, in part, on advice provided to them by the Christie, Parker & Hale firm.

Dunhall has propounded an interrogatory and document request calling for the identity of every person having knowledge [Interrogatory No. 4] and requesting production of all documents referring or relating to any facts regarding non-infringement, invalidity, unenforceability of any other defense [Request for Production No. 9] that "any defendant believes tend to show that any infringement by any Defendant of U.S. Reissue Patent No. Re. 34,196 was not willful ..." Amended Local Rule 7.15 Joint Stipulation Re: Plaintiff's Motion to Compel Discovery from Defendants ("Joint Stipulation") at 5.

In response to Dunhall's interrogatory, Defendants identified, among others, William Christie and George Skoler as persons having knowledge regarding opinion(s) of patent counsel. Joint Stipulation at 4. In response to the Document Request, Defendants produced three letters from the Christie, Parker & Hale firm to Robert Hayman, dated January 17, 1994, April 27, 1994 and August 12, 1994. Joint Stipulation at 5–6; Declaration of Laurie Gooch ("Gooch Decl."), Exhs. D, E. & F. Defendants have also produced a copy of an August 1, 1994 memorandum written by George Skoler, a patent attorney retained by Den–Mat, a competitor of Dunhall and Defendants, to William Christie. Joint Stipulation at 7; Gooch Decl. at H. In addition, Defendants produced a letter dated October 23, 1996 related to counsel's opinion on the invalidity of the '196 patent. Gooch Decl.,

Exh. G at 192 (Exhibit 26 to Christie Deposition).

In addition, in the course of preparing the joint stipulation, the Defendants have offered to produce seven additional documents that they believe, arguably, to fall within the scope of the wavier arising from Defendants' assertion of the advice of counsel defense. Joint Stipulation at 12. These are: six documents which include characterizations of the conclusion reached by Mr. Skoler that the '196 patent was invalid; and a fax from Ken Rosenblood to Mr. Christie regarding Christie's opinion. Joint Stipulation at 12.

Dunhall took the deposition of William Christie on October 21, 1997. Joint Stipulation at 6. A copy of the deposition transcript was submitted to the court along with the joint stipulation. Gooch Decl., Exh. G. During the deposition, Christie answered questions regarding the opinion letters provided by Christie, Parker & Hale to Defendants regarding counsel's opinion that the Discus product did not infringe the '196 patent and that the '196 patent was invalid. *See, e.g.,* Gooch Decl., Exh. G. at 193. Christie refused to discuss, asserting attorney work product doctrine, facts beyond the information contained in these communications that would support Defendants' Answer that their product does not infringe, that the '196 patent is invalid, and that the '196 patent is unenforceable. *Id.* at 203, 205, 206.

Dunhall moves to compel the production of all documents, otherwise privileged under the attorney client-privilege and the attorney work product doctrine, with respect to the issues of the validity, infringement and enforceability of the '196 patent. Amended Local Rule 7.15 Joint Stipulation Re: Plaintiff's Motion to Compel Discovery from Defendants ("Joint Stipulation"), at 2. Dunhall contends that it is entitled to obtain the production of such documents and related information in the possession of the Defendants' attorneys, past, present and future. *Id.* Dunhall also requests that the Court conduct an *in camera* review of the all documents listed in Defendants' privilege log with a view to ordering defendants to produce any documents that have been withheld without justification. *Id. See* List of Privileged Documents, Exh. I, Declaration of Laurie Gooch ("Gooch Decl.") at 266–75.

Defendants oppose this motion. Defendants object to the scope of the waiver claimed by Dunhall. Defendants argue that their assertion of "advice of counsel" as a defense to Plaintiff's allegation of willful infringement does not waive privileged communications or attorney work product on the subjects of infringement, validity or enforceability in general. Joint Stipulation at 2. Rather, Defendants argue that the scope of the waiver is the advice provided by counsel upon which Defendants are claimed to have formed a good faith belief at the time that it engaged in the acts alleged to have constituted infringement. *Id.*

Counsel for the parties appeared before the Magistrate Judge on December 16, 1997 and argued the motion. The Magistrate Judge took the matter under submission at the conclusion of the hearing.

## ANALYSIS

The question before the Court on plaintiff's motion to compel is the scope of the waiver of otherwise privileged documents when an alleged willful patent infringer asserts advice of counsel as a defense.

Defendants argue that the scope of the waiver created by an advice of counsel defense is narrow. Defendants argue that the defense requires only that they produce, and testify regarding, the final legal opinions upon which defendants relied in order to conclude, prior to the filing of the litigation, that their product did not infringe the '196 patent or to conclude that the '196 patent was invalid or unenforceable. Accordingly, defendants would limit discovery to the four Christie, Parker & Hale opinion letters, the Skoler memo to Christie dated August 1, 1994 and six ancillary documents they now consider to fall within this narrow waiver. Joint Stipulation at 6–7; Supplemental Memorandum of Law in Opposition to Plaintiff's Motion to Compel Discovery from Defendants ("Defendant's Supplemental Memo") at 2 & n. 1.

Plaintiff views the scope of the waiver very broadly. Dunhall contends that by electing to use otherwise privileged documents expressing opinions on the issues of infringement, invalidity and unenforceability as a part of their defense, Defendants have

waived both the attorney-client and the attorney work-product doctrine immunity with respect to the subjects of infringement, invalidity or enforceability of the '196 patent. Joint Stipulation at 2.

The parties have cited authority to the Court to support both arguments. Before considering the scope of the waiver, it is valuable to restate the dimensions of the defense of advice of counsel in response to a claim of willful infringement and to revisit the general principles guiding the discovery of privileged materials.

1. *Willful Infringement and Its Defense.*

■ Where a potential infringer has notice of another's patent rights, he has an affirmative duty of due care. *Ryco, Inc. v. Ag–Bag Corp.*, 857 F.2d 1418, 1428 (Fed.Cir. 1988). The test is whether, under all the circumstances, a reasonable person would prudently conduct himself with any confidence that a court might hold the patent invalid or not infringed. *Id.* Thus, the defendant's intent and reasonable beliefs are the primary focus of a willful infringement inquiry. *Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 944 (Fed.Cir.1992). Stated somewhat differently, "[w]illfulness is a determination as to a state of mind." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828 (Fed. Cir.1992).

Factors that courts have considered in determining whether a finding of willfulness is warranted include:

> [w]hether the infringer intentionally copied the ideas of another; whether the infringer, once on notice of the patented invention, investigated the scope of the patent to form a good-faith belief that it was invalid or not infringed; and the infringer's behavior as a party to the litigation....

*In re Hayes Microcomputer Products, Inc. Patent Litigation*, 982 F.2d 1527, 1543 (Fed. Cir.1992); *see also Delta–X Corp. v. Baker Hughes Production Tools, Inc.*, 984 F.2d 410, 414 (Fed.Cir.1993) (court found no willful infringement in light of evidence of no copying and fact that defendant "mounted substantial challenge to infringement"); *Amsted*

*Industries, Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 183–84 (Fed.Cir.1994) (considering deliberate copying and inappropriate litigation behavior, fact finder may properly find willful infringement).

■ Although reliance upon competent counsel is evidence of good faith, it is not conclusive. *See Delta–X*, 984 F.2d at 414 (defendant's failure to obtain legal advice does not mandate a finding of willfulness or bad faith). When a defendant asserts that it relied upon advice of counsel, the court must examine "objective evidence" to see whether the claimed reliance was justifiable. *Steelcase, Inc. v. Haworth, Inc.*, 954 F.Supp. 1195, 1198 (W.D.Mich.1997) (citing *Read*, 970 F.2d at 829).

> Opinion letters should be reviewed to determine whether they evidence an adequate foundation based on all necessary facts or whether they are conclusory on their face. Counsel's opinion must be thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable.

*Id.* (citing *Westvaco Corp. v. International Paper Co.*, 991 F.2d 735, 743–44 (Fed.Cir. 1993) (internal quotations and citations omitted); *see also SRI International Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462, 44 U.S.P.Q.2d 1422, 1426 (Fed.Cir. 1997) (opinion of counsel viewed objectively, to determine whether it was obtained in a timely manner, whether counsel analyzed the relevant facts and explained the conclusions in light of the applicable law, and whether the opinion warranted a reasonable degree of certainty that the infringer had the legal right to conduct the infringing activity)).

■ In considering the reasonableness of the accused infringer's reliance on an opinion of counsel, the Federal Circuit has directed its inquiry to objective indicia of reliability, those that can be discerned from the four corners of the opinion.[1] *See Underwater Devices, Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1390 (Fed.Cir.1983); *see also Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed.

---

[1] "Had [the opinion letter] contained within its four corners a patent validity analysis, properly and explicitly predicated on a review of the file histories of the patents at issue, and an infringement analysis that, inter alia, compared and contrasted the potentially infringing method or apparatus with the patented inventions,

Cir.1996) (competency requirement applies both to the qualifications of the person giving the opinion and the contents of the opinion itself). For example, courts have considered: (1) whether the opinion was written or oral; (2) whether the opinion was prepared by an independent, experienced attorney or an interested person; (3) whether the opinion sets out facts required for a thorough discussion of relevant issues; (4) whether the opinion letter sets out the case law and analyzes the issues; (5) the "overall tone" of the letter, and (6) the date on which the opinion was given or prepared. *See, e.g., SRI International*, 127 F.3d 1462, 44 U.S.P.Q.2d at 1426 (opinion obtained seven years after defendant began infringing "too little, too late"); *Graco, Inc. v. Binks Manufacturing Co.*, 60 F.3d 785, 793 (Fed.Cir.1995); *Minnesota Mining & Manufacturing Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1580–81 (Fed.Cir.1992); *Westvaco*, 991 F.2d at 743–44; *In re Hayes*, 982 F.2d at 1543–44; *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 828–29 (Fed.Cir.1989) (character of the letter on its face defeated infringer's claim to having a reasonable belief), *cert. denied*, 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 747 (1990); *Ortho*, 959 F.2d at 944–45; *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*, 761 F.2d 649, 656 (Fed.Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985); *Underwater Devices*, 717 F.2d at 1390. It is not necessary that the opinions expressed be legally correct; the issue is whether counsel's opinion is thorough enough to instill a reasonable belief in the mind of the alleged infringer. *Ortho*, 959 F.2d at 944; *Graco*, 60 F.3d at 793.

### 2. Scope of the Waiver of Attorney–Client and Work Product

Although the Federal Circuit has not answered the specific question regarding the scope of the privilege waiver that is the consequence of a defendant's decision to assert that it has reasonably relied on the opinion of its counsel as a defense to willful infringement, the court has made clear that the infringer's intent, not that of counsel, is the relevant issue.[2] *Thorn EMI North America, Inc. v. Micron Technology, Inc.*, 837 F.Supp. 616, 621 (D.Del.1993). With this principle in mind, the scope to which otherwise privilege materials must be produced by the party asserting the defense must be broad enough "to illuminate that issue, but no broader." *Steelcase*, 954 F.Supp. at 1198; *Kelsey–Hayes Co. v. Motor Wheel Corp.*, 155 F.R.D. 170, 172 (W.D.Mich.1991) (in patent cases, courts generally construe the scope of the subject matter waiver narrowly); *Johns Hopkins University v. Cellpro*, 160 F.R.D. 30, 34 (D.Del.1995) (citing cases for proposition that attorney client privilege is worthy of maximum legal protection).

■ Where, as in this case, Defendants have responded to a claim of willful infringement by offering evidence that they relied reasonably and in good faith on the advice of counsel, they have clearly waived the attorney client privilege as to all communications between counsel and client regarding the advice actually given. *Steelcase*, 954 F.Supp. at 1198; This necessarily includes the formal opinions received by Defendants, which have been produced.

In addition, the scope of the waiver encompasses materials beyond the opinions themselves. If there are otherwise privileged documents in the *client's* files that refer or relate to counsel's opinion, *e.g.*, that refer or reflect an absence of reliance by the Defendants on the advice provided by counsel, those documents would be highly relevant and no longer privileged.[3] *Thorn EMI*, 837 F.Supp. at 621.

---

the opinion may have contained sufficient internal indicia of credibility to remove any doubt that [defendant] in fact received a competent opinion."
*Underwater Devices*, 717 F.2d at 1390.

2. Defining the scope of Defendants' waiver to be all otherwise privileged materials on the subject of the opinion, it is not necessary to set forth a separate discussion on those materials for which work product protections are claimed. *But see Electro Scientific Industries, Inc. v. General Scan-*

*ning, Inc.*, 175 F.R.D. 539, 1997 U.S. Dist. LEXIS 14266 (N.D.Cal. Sept. 18, 1997).

3. There is no temporal limit on this aspect of the waiver, *i.e.* it would not necessarily end when the opinion is generated. Assuming, *arguendo*, a broadly stated request under the Federal Rules of Civil Procedure, Defendants would be obligated to produce otherwise privileged documents that refer or reflect their rejection or intentional disregard of the original opinion, including but not

■ Further, Defendants have waived the privilege as to all materials or communications by the Defendants to the attorney that was used or considered in preparing the opinion.[4] *Steelcase*, 954 F.Supp. at 1198–99; *Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361, 363 (D.Mass.1995). The waiver does not, however, extend to attorney work product or documents upon which the attorney relied that were not disclosed or otherwise communicated to the client.[5] *Steelcase*, 954 F.Supp. at 1199 (contents of the attorney's files are not discoverable in the absence of proof that they were disclosed to the client); *Micron Technology*, 837 F.Supp. at 622 (To the extent that firm has information or documents regarding its analysis that were not communicated to client and not received from client; this information is not probative of client's intent and is not discoverable).

In defining the scope of the waiver in this fashion, I reject the contention that by asserting an advice of counsel defense to willful infringement, the Defendants were required to waive attorney client privilege and work product protections on each subject matter addressed in the opinion letters, *i.e.*, infringement, validity and enforceability. In so ruling, I reject the holding and rationale of *Mushroom Associates v. Monterey Mushrooms, Inc.*, 1992 WL 442892 (N.D.Cal.1992), and its progeny. The court's statement in

*Mushroom Associates* that "[t]he *only* way plaintiff can attack the defendant's advice of counsel defense is by having access to circumstances and factors surrounding the advice" ignores the large number of Federal Circuit decision where plaintiffs defeated an infringer's opinion letter without violating the protections of privileged communications.[6] *Id.* 1992 WL 442892 at *5 (emphasis added). Without the benefit of a sweeping waiver, plaintiffs have successfully attacked the "advice of counsel" defense by presenting evidence that counsel's advice had no effect on defendant's decision to continue its course of conduct. *See, e.g., In re Hayes*, 982 F.2d at 1544 (client did not disclose all the material information to expert); *Minnesota Mining & Manufacturing*, 976 F.2d at 1581 (opinion obtained from in-house, interested party); *Kori*, 761 F.2d at 656 (opinion letter was obtained well after plaintiff began making the infringing item); *Underwater Devices*, 717 F.2d at 1389 (expert advice not obtained until long after infringement commenced).

The sweeping scope of the waiver created in *Mushroom Associates* requires a defendant to choose—often at the earliest stage possible in the case—between surrendering its litigation files or sacrificing a fair defense to exceptional damages.[7] Requiring such an election is neither equitable nor fair, and can be easily avoided by tailoring the scope of the waiver in a way that accommodates the relevant inquiry posed by the defense without

---

limited to contrary opinions from different counsel. *See Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed.Cir.1983); *Micron Separations*, 159 F.R.D. at 365 (waiver extends to work product of trial counsel expressed to defendant *which contain "potentially damaging information" and/or express "grave reservations" respecting the opinion letter*) (emphasis added). By requiring that these materials (if they exist) be produced, one avoids the danger of a favorable opinion being used while a less favorable one remains undisclosed. *See FMT Corp. v. Nissei ASB Co.*, 24 U.S.P.Q.2d 1073, 1075 (N.D.Ga. 1992).

4. There is necessarily a temporal limit on this aspect of the waiver. It would end when the attorney rendered his opinion. *See Micron Separations*, 159 F.R.D. at 363.

5. As well stated by the court in *Steelcase*, plaintiff is "not entitled to 'audit' attorney Thiel's opinion

to determine whether it was actually correct. Rather the issue is the opinion's reasonableness within its four corners, in light of everything else that [defendant] knew." 954 F.Supp. at 1200.

6. *Accord Steelcase*, 954 F.Supp. at 1199 ("Mushroom Associates case is based on faulty analysis, under which the attorney's state of mind, and not that of the client, becomes paramount").

7. As described in *Cellpro:* "the patent owner opens with a claim for willful infringement; the alleged infringer answers by denying willful infringement and asserts good faith reliance on advice of counsel as an affirmative defense; then the owner serves contention interrogatories and document requests seeking the factual basis for that good faith reliance defense and the production of documents relating to counsel's opinion; the alleged infringer responds by seeking to defer responses and a decision on disclosure of the opinion; the owner counters by moving to compel . . . ." 160 F.R.D. at 34.

further incursion into otherwise protected materials.[8]

Additionally, I have reviewed the transcript of the Christie deposition and the statements by Defendants' counsel on the scope of the attorney client privilege being asserted. Joint Stipulation at 6; Gooch Decl.Exh. I at 76–77. I find that the statements made by Defendants' counsel should not be read as a waiver or admission of the Defendants' position. Defendants have not produced the documents it contends are protected, and in opposing plaintiff's motion to compel have adequately preserved their position that the information should be immune from disclosure. *See, e.g., Thorn EMI,* 837 F.Supp. at 622.

### 3. *In Camera Review*

In light of this Order, Defendants shall review those materials for which privilege is currently claimed and, if necessary, revise their privilege log. Parties are ordered to meet and confer in good faith over any issues that remain after Defendants provide an amended privilege log and/or documents for which no privilege is asserted. Pending the outcome of those meetings, plaintiff's request for an *in camera* review by this court is premature.

### 4. *Billing Records*

▮ Plaintiff has specifically requested the Court rule on its request to compel the production of the bills prepared by Parker, Christie & Hale, which appear on Defendants' Privilege Log. One objective measure of the reasonableness of an opinion upon which Defendants claim to rely is the expertise of the attorneys preparing the opinion and the amount of time spent in its preparation.

Therefore, plaintiffs are entitled to discovery of the identity of the attorneys at Parker, Christie & Hale who worked on the opinion letters, and the total hours expended by those persons on those opinions. This information may be more readily provided in summary form, but may also be produced through redacted billing records. Descriptions of the particular work performed is not to be disclosed; a common description (e.g.,

---

**8.** Contrary to the court in *Cellpro,* I find nothing in the Federal Circuit's decisions to suggest that a defendant must waive the attorney client privilege on every issue discussed in an opinion letter

work on Discus opinion letter) may be used instead.

IT IS SO ORDERED.

Dec. 17, 1997.

in order to assert an affirmative defense of good faith reliance on the advice of counsel. 160 F.R.D. at 34.