**GRACO, INC., Plaintiff–Appellee,**

v.

**BINKS MANUFACTURING COMPANY, Defendant–Appellant.**

No. 93–1494.

United States Court of Appeals, Federal Circuit.

June 30, 1995.

Edward W. Goldstein, Tobor & Goldstein, Houston, TX, argued for plaintiff-appellee. With him on the brief were Richard L. Stanley, Joseph A. Uradnik, L. Gene Spears, Jr. and Suzanne E. Lecocke, Arnold, White & Durkee, Houston, TX.

Susan Getzendanner, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, argued for defendant-appellant. With her on the brief were Constance S. Huttner, Mauro Premutico and Tammy D. McCutchen. Also on the brief were Thomas R. Juettner, Robert A. Lloyd, Paul G. Juettner and Michael Pointek, Juettner, Pyle & Lloyd, Chicago, IL.

Before: NIES, PLAGER and CLEVENGER, Circuit Judges.

NIES, Circuit Judge.

Binks Manufacturing Company appeals the final judgment of the United States District Court for the Southern District of Texas, Houston Division (Civil Action No. H–83–2979), which held asserted claims 1–5 and 15 of Graco, Inc.'s United States Patent No. 4,035,109 ("the '109 patent") willfully infringed. The '109 patent discloses and claims a pump particularly useful for pumping heavy and abrasive fluent materials. In addition to damages, which were trebled to $1,299,000, the court awarded Graco reasonable attorney fees permissible for an exceptional case and

prejudgment interest. Also, the court permanently enjoined Binks from making, using, or selling all models of its pumps in suit.

On appeal, Binks argues that the court erred in holding that the '109 patent was not invalid under 35 U.S.C. § 112 (1988) for failure to disclose the best mode, and that Binks's Model D series pumps infringed the '109 patent. Binks also argues that the district court erred in finding Binks's infringement was willful as the basis for trebling damages, and in awarding attorney fees as an exceptional case together with prejudgment interest thereon.

Because of inadequate findings of fact and conclusions of law on the issues of best mode and infringement, we *vacate* the judgment. We *reverse* the award of attorney fees. The case is *remanded* for further proceedings in accordance with this opinion.

I.

*Background*

Graco, a manufacturer of devices commercially known as "Glutton" pumps, filed its complaint on May 9, 1983. The complaint alleged that Binks, through the actions of one of its divisions, Poly–Craft Systems ("Poly–Craft"), infringed Graco's '109 patent by making and selling competitive pumps called "Funny" pumps.

Paul Schlosser and Edwin Drath, the named inventors of the '109 patent, conceived their invention in October 1973. With financing from Control Pressure Systems, Inc. ("CPSI"), Schlosser and Drath hired Richard Schwarz, Drath's patent attorney, to prosecute a patent application covering their invention. Upon issuance both inventors assigned their rights in the patent to Edward Bleiweiss, President of CPSI, who in turn assigned the rights to CPSI. Graco obtained the rights to the '109 patent in November of 1982, upon acquiring some of the assets of CPSI.

In March 1975, Schwarz sent Drath and Schlosser a draft of the '109 patent application for review. Of significance to the best mode issue, in the spring of 1975, Schlosser had independently conceived an improvement

to the '109 pump. Specifically, Schlosser invented an improved seal and clamping mechanism to use in place of the O-ring seal described in the draft application. Schlosser suggested modifying the claims of the draft '109 application to recite the phrase "elastomeric ring" in lieu of the term "O-ring" so as to describe the seal more broadly. Schlosser with Bleiweiss's approval also asked Schwarz to prepare a patent application for the pump with the improved seal in Schlosser's name only. Schlosser was at the time of this invention an employee of CPSI and assigned over his rights to that company. The application for the Schlosser invention was filed on August 19, 1975, and issued as the 4,029,442 patent on June 14, 1977 with CPSI as assignee. The application for the joint invention was later filed on August 25, 1975, and issued as the '109 patent on July 12, 1977, to the named inventors.

At least as early as March 1977, CPSI was manufacturing the Glutton pump, which incorporated the inventions of the '109 and '442 patents. In March of 1979, Poly–Craft began purchasing Glutton pumps from CPSI for resale with Poly–Craft's spray apparatus. Because of quality control problems, Poly–Craft became interested in manufacturing the pumps instead of buying from CPSI.

In July 1979, Binks acquired Poly–Craft and continued to purchase Glutton pumps from CPSI. In late 1980 or early 1981, Binks and CPSI discussed the possibility of either Binks taking a license from CPSI to manufacture the pumps for itself, or of Binks purchasing CPSI. Ultimately, these discussions failed, and no license was granted. Burke Roche, President of Binks, decided that Binks should manufacture its own pumps, and in July 1981, after consultation with patent counsel concerning possible infringement as detailed below, Poly–Craft began manufacturing its Funny pumps. About two months later, Poly–Craft stopped buying Glutton pumps from CPSI (now owned by Graco). This suit was filed in mid–1983, charging Binks with infringement of the '109 patent only.

Over the years, Poly–Craft manufactured several different models of its Funny pumps—the Model 450, the Model 1200, the 2300A–C Models, and the Model D series, all of which were alleged to infringe the '109 patent. Upon suit being filed, Binks's counsel reviewed the pumps in production. While original versions of Funny pump models had been approved by counsel, the designs for Model 450 and Model 1200 pumps in production were modified versions. Upon learning of the changes, counsel disapproved and production ceased. Only 43 units were sold worth approximately $57,000. Binks stipulated to infringement by these units. However, counsel advised that production of the Model 2300A–C pumps which he had approved before suit could continue. Binks then redesigned its pumps, again with the advice of counsel, to further differentiate them from the patented pump. The redesigned pumps were designated the Model D series (i.e. the 300D, 450D, 800D, 1200D, 1500D, and 2300D), and production of the Model 2300A–C pumps was discontinued at about the time Binks introduced the redesigned Model D series pumps. Before manufacture, Binks's counsel presented the Model D design to Graco's counsel for review, but in Graco's counsel's opinion, the redesigned pumps also infringed. Binks's counsel, however, continued to advise Binks that the Model D series did not infringe, and Binks manufactured and sold the Model D series pumps until enjoined.

A bench trial was held from September 30, 1986, to October 23, 1986. Nearly four years after trial, the trial judge requested proposed Findings of Fact and Conclusions of Law from the parties which they submitted between May 17, 1990 and August 15, 1990. Three years later, the court issued its Findings of Fact and Conclusions of Law, holding the '109 patent was neither invalid nor unenforceable and that all Binks's models were infringements. The parties stipulated to the amount of a reasonable royalty if the judgment is sustained. After a hearing on enhancement of damages, on attorney's fees, and on prejudgment interest, the court entered its Final Judgment on June 29, 1993. This appeal followed. The principal issues on appeal are invalidity of the '109 patent and noninfringement by Binks's Model D pumps. Liability for infringement by Binks's

discontinued models is contested only on the ground of invalidity of the patent.

## II.

### *Best Mode*

The merits of the best mode defense turn on whether the improvement which Schlosser developed for the Glutton pump prior to the filing of the '109 patent application had to be disclosed therein. The record is undisputed that Schlosser discovered that the O-ring wore out in the prototype pump and needed daily replacements. To overcome this deficiency, Schlosser designed an improved seal structure which used a lip seal instead of an O-ring. The '442 patent is directed to the same pump as in the '109 patent with the improved seal structure. Commercial versions of the Glutton incorporated this invention.

■ The patent statute, in § 112, requires that the specification "set forth the best mode contemplated by the inventor for carrying out his invention." The best mode need not be developed by the patent applicant. It may be the commercial product of a third party, *Chemcast Corp. v. Arco Industries Corp.*, 913 F.2d 923, 928–29, 16 USPQ2d 1033, 1037–38 (Fed.Cir.1990) (failure to disclose third-party manufacturer of and trade name of the material used to make the locking portion of the claimed grommet violated best mode requirement); *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 10 USPQ2d 1143, 1988 WL 391250 (N.D.Ill. 1988) ("The best mode of practicing the invention must be disclosed, even if the inventor was not the discoverer of the best mode."), *aff'd in part, rev'd in part,* 716 F.Supp. 316, 11 USPQ2d 1817 (N.D.Ill.1989), *aff'd,* 910 F.2d 804, 15 USPQ2d 1481 (Fed. Cir.1990), or even another's trade secret, *Chemcast Corp.*, 913 F.2d at 930, 16 USPQ2d at 1038 ("Whether characterizable as 'manufacturing data,' 'customer requirements,' or even 'trade secrets,' information necessary to practice the best mode simply must be disclosed."); 2 D. Chisum, PATENTS, § 7.05[1] ("The 'best mode' may have been invented or developed by someone other than the inventor of the claimed subject matter."). The

best mode can be, but does not need to be, claimed in the application—it merely needs to be disclosed. That Schlosser was entitled to a patent in his own name alone on the improvement does not negate the requirement of disclosure of the improvement in the '109 application, assuming the improvement was the best mode contemplated by an inventor for practicing the invention at the time of filing that application.

While the parties argue the merits of the best mode defense, they also dispute whether or not the issue was tried, whether or not the district court ruled on the issue, and what disposition is appropriate on appeal. In this connection, we note that the pretrial order included the issue: "Did the application leading to the '109 patent set forth the best mode contemplated by Paul Schlosser and/or Edwin Drath of carrying out their invention." In addition, Binks's post-trial proposed findings and conclusions contained 11 paragraphs on its best mode defense. In contrast, those of the district court (like Graco's proposed findings and conclusions) did not contain any findings directed to best mode.

Graco argues that specific findings on best mode are unnecessary; that the court held the patent was not proved invalid or unenforceable and that that is enough. Alternatively, Graco argues that the proposed findings by Binks on the best mode defense were a post-trial afterthought and that the defense had in fact been waived. On the merits, Graco argues that the improvement, although the subject of a patent application, was still in the development and testing stage so that it could not be contemplated as a best mode. Finally, Graco argues there is no evidence of intentional concealment of the best mode so that the defense fails as a matter of law.

■ Graco's last argument is disposed of easily. Graco confuses Binks's inequitable conduct defense with failure to disclose the best mode. While in appropriate circumstances, a failure to disclose the best mode *may* be so egregious as to constitute inequitable conduct, *Consolidated Aluminum*, 910 F.2d 804, 15 USPQ2d 1481 (*intentionally* withholding best mode and disclosing fictitious mode constituted inequitable conduct), specific intent to deceive is not a required

element of a best mode defense. *Spectra–Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1535, 3 USPQ2d 1737, 1745 (Fed.Cir.) (only evidence of concealment, "whether accidental or intentional," is considered), *cert. denied*, 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987). Thus, this argument presents no basis for affirmance.

On the other hand, we reject Binks's argument that the record requires reversal of the court's ruling that the patent was not proved to be invalid as a matter of law. Binks points to the trial court's finding that "in the spring of 1975, Schlosser conceived a specific seal and clamping mechanism as an improvement to the Glutton." Binks also relies on Schwarz's pre-application letter to Schlosser memorializing a meeting in which Schlosser said that the improvements were "especially advantageous" for the jointly invented pump. Also, the earlier filed '442 application depicts the '109 pump with the new seal structure in Figure 1 accompanied by a statement in the specification that "the best mode is shown" there. According to Binks, the record evidence is clear and convincing that Schlosser subjectively regarded his improved seal as a

better mode than an elastic ring when he filed the '109 patent application. Thus, Binks seeks reversal and, as a fallback position, a remand for findings.

Having considered the above and all other arguments of the parties, we conclude the case must be remanded for the trial court to reconsider the issue of best mode. We are simply unable to determine whether the trial court—if it did decide the issue—applied the correct law or confused best mode with inequitable conduct in believing intentional concealment was required. Further, we are unable to determine whether Binks might have waived the issue. The district court is in the best position to determine these issues.

### III.

#### *Infringement*

Binks also argues that the district erred in finding infringement of the asserted claims by the Model D pumps. In particular, Binks submits *inter alia* that the Model D does not include a "rib" within the meaning of claims 1 or 15.[1] Graco disagrees, and urges an affir-

---

1. Claim 1 of the '109 patent recites (emphasis added):

    1. A pump for fluent materials and especially suitable for moving heavy fluent and abrasive materials, comprising:

    a housing member providing a hollow cylinder chamber receptive of material to be pumped and having an axially extending chamber wall and opposite ends;

    a piston within and shorter than the cylinder chamber and having its perimeter of smaller diameter than and in limited spaced gap relation to said wall so that material can flow through the gap;

    a closure at one end of the cylinder chamber having means for guiding a piston rod of the piston for axial forward and return strokes of the piston relative to the opposite end of the cylinder chamber;

    means for driving the piston rod and thereby the piston in said forward and return strokes;

    a generally cup-shaped end closure rigid with said opposite end of the cylinder chamber, and said cup-shaped closure having a blind end chamber which forms a forward extension from the cylinder chamber and into which the piston extends a limited distance in the forward stroke of the piston, said blind end extension chamber having a wall diameter which is larger than the diameter of the piston perimeter so that there is a spaced gap relation between the piston perimeter and said exten-

sion chamber when the piston extends into said extension chamber;

    means for introducing into said cylinder chamber material to be pumped;

    checked valved means for receiving pumped material from said extension chamber;

    *a rigid annular rib between said cylinder chamber and said extension chamber and having a radially inner annular rib surface which extends to a smaller diameter than the diameters of the cylinder chamber wall and the extension chamber wall but is of a substantially larger diameter than the piston perimeter diameter, said rib defining a port through which the piston moves freely and in substantial annularly spaced gap relation in a forward stroke from a position wherein the forward end of the piston is entirely within the cylinder chamber and clear of said rib to a position wherein the piston projects partially through said rib;* and

    a combination valving, sealing and wiping elastic ring engaged with said rib and having an annular portion projecting radially inwardly beyond said inner annular surface of the rib to a substantially smaller diameter than the diameter of the piston perimeter;

    said projecting annular portion of the elastic ring extending across said gap and being engaged by the piston during the forward stroke through said rib into said extension chamber, and the piston perimeter elastically expanding the radially inwardly projecting portion of the

mance of the court's judgment, asserting the Model D pumps infringe the claims both literally and under the doctrine of equivalents.

■ As is well known, "[t]he determination of infringement is a two-step process. First, the language of the claim must be interpreted. Second, the accused device must be compared to the claim language as interpreted." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed. Cir.1992). The first step, claim construction, is a matter of law exclusively for the court, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) (*in banc*); the second step involves a question of ultimate fact. *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1569, 219 USPQ 1137, 1140 (Fed.Cir. 1983). Thus, in order to review the court's finding that Binks's pumps infringed, we need to know what meaning and scope the district court gave the asserted claims. *Key Mfg. Group, Inc. v. Microdot, Inc.*, 925 F.2d 1444, 1448, 17 USPQ2d 1806, 1809 (Fed.Cir. 1991) ("Before analyzing a claim to determine whether infringement occurs, the court must properly interpret the claim. Improper claim construction can distort the entire infringement analysis.").

■ In this case, the court provided no enlightenment on the first step and inadequately executed the second step. The court's opinion is absolutely devoid of *any* discussion of claim construction. We simply do not know what claim construction the trial judge gave the terms in the claims.

Regarding the second step, the opinion contains a single substantive "finding" regarding infringement,[2] which reads in its entirety:

> On claims 1 through 5 and 15 of the '109 patent, Binks's noninfringement is based on its argument that none of the Models 1200 A, B, C or the Model D series Funny pumps have an annular rib between the cylinder's chamber and extension chamber as defined in those claims. Each of these Binks models has a rib or an element to the same purpose, quality, and function as the rib defined and described in claims 1 through 5 and 15 of the '109 patent.

Such a finding, which is conclusory in nature, is entirely inadequate under Rule 52(a) of the Federal Rules of Civil Procedure. It is even impossible to determine whether the court held infringement to be literal or under the doctrine of equivalents. Graco's argument that we should find literal infringement of claim 15 and disregard the findings of infringement of claims 1–5 merely illustrates the inadequacy of the court's findings. In addition, respecting infringement under the doctrine, it is also necessary to have findings on the application of prosecution history estoppel to the facts of this case.

The entire omission of a claim construction analysis from the opinion, and the conclusory factual findings on infringement, each provide an independent basis for remand. Because insufficient findings preclude meaningful review by this court, we remand.

### IV.

### *Willful Infringement*

After concluding that Binks infringed claims 1–5 and 15, the court concluded that

---

elastic ring into a tensioned sealing and wiping annular gripping engagement with the piston perimeter and maintaining pumping pressure in said extension chamber against leakage past said rib and the piston during said forward stroke of the piston and the extension chamber;

*said rib providing a rigid annular portion between said cylinder chamber and the elastic ring serving as a backup barrier for the elastic ring to prevent backward extrusion of the ring into the cylinder chamber due to pumping pressure in said extension chamber;*

said piston producing a suction effect and developing a negative pressure in said extension chamber during the return stroke of the piston;

said piston completely withdrawing from the elastic ring at the end of said return stroke so that material can flow from said cylinder chamber past said piston and through said rib and said elastic ring into said extension chamber in response to said negative pressure;

said projecting annular portion of the elastic ring providing the only surface in the pump with which the perimeter of the piston engages at any time and all other surfaces within the pump including said rib remaining at all times substantially spaced from the piston perimeter.

**2.** The other finding merely identifies the discontinued models stipulated to infringe.

Binks's infringement was "deliberate, warranting the treble damage." Willfulness of the infringement is the sole basis for the court's exercise of its discretion to enhance damages under 35 U.S.C. § 284 (1988). Inasmuch as we remand for findings, not for reconsideration of infringement, we address the issue of the willfulness of the infringement.

■■■ A court's determination that infringement was willful is a finding of fact, reviewable under the clearly erroneous standard. *Spindelfabrik Suessen–Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1083, 4 USPQ2d 1044, 1051 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 987 (1988). Once a finding of willfulness has been made, the decision to enhance damages, up to three times the amount found, is discretionary. Section 284 states that "the court *may* increase the damages up to three times the amount found or assessed." *See King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 866, 226 USPQ 402, 411 (Fed.Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986).

There are no hard and fast rules regarding a finding of willfulness. *Rolls–Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1110, 231 USPQ 185, 191 (Fed.Cir.1986). Rather, we have stated many times that a number of factors enter into a willfulness determination and, as such, the issue is properly resolved by evaluating the totality of the surrounding circumstances. *Minnesota Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1580, 24 USPQ2d 1321, 1340 (Fed.Cir.1992); *Underwater Devices Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1390, 219 USPQ 569, 576–77 (Fed.Cir. 1983).

The district court cited two bases in support of its finding of deliberate, willful infringement—inadequate opinions of counsel and failure to follow the advice of their counsel in making the Model 450 and the Model 1200 pumps. Specifically, the court stated:

> Because [the noninfringement opinions] were based on an examination of the '109 patent and the Glutton pump, with no analysis of the history of the '109 patent, the noninfringement opinions solicited by Binks before it manufactured Funny pumps were not adequate advice for Binks to rely justifiably. More important, Binks ignored the advice of its attorneys, and it manufactured Funny pumps that it admits infringed.

For the reasons stated below, the court's finding of willfulness was clearly erroneous.

■■■ From 1979 through 1983, Binks and Poly–Craft communicated with patent counsel regularly with respect to possible infringement of any patents. Nearly two years *before* starting the manufacture of its own pumps, indeed, before designing any models, Poly–Craft sought advice from its counsel Mr. O'Reilly regarding avoiding infringement of others' patents. The first of two formal opinion letters (July 10 and September 26, 1979) discussed only the '442 patent. The earliest searches conducted by Mr. O'Reilly targeted patents either issuing in the name of Schlosser or to Bleiweiss or his company as assignee and disclosed only the '442 patent. The '109 patent was issued in the name of "Drath et al." and was not uncovered until a later date. Nevertheless, a full 1½ years prior to the manufacture of its pumps began, Poly–Craft obtained an opinion from Mr. O'Reilly addressing the '109 patent. His letter noted the broader scope of the '109 patent's claims, but he still concluded that "it should be possible to design an alternative sealing arrangement which will not infringe either of these patents."

Binks, acting separately, also obtained assurance of noninfringement from its patent counsel of 20 years, Mr. Thomas Juettner. Mr. Juettner worked with their technical people in developing noninfringing designs and forwarded a formal opinion to Binks's management on June 10, 1980. This opinion compared two specific pump designs to the independent claims of both the '442 and the '109 patent. Juettner set forth four separate structural claim limitations and concluded that the proposed designs did not contain (i.e., contained "nothing comparable" to) three of these structural limitations. Regarding the fourth element, identified as an elastic ring having a particularly sized diame-

ter in relation to a piston, Juettner concluded that Graco would be "estopped from interpreting the claimed 'elastomeric ring' as anything other than an O-ring", "constitut[ing] a further distinction of the Binks seals."

■ A critical factor in evaluating the effect of an opinion of counsel on willfulness is the reasonableness of a party's reliance thereon. *Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 944–45, 22 USPQ2d 1119, 1125–26 (Fed.Cir.1992) (upholding finding of no willful infringement where infringer reasonably relied on patent counsel's opinions). The district court found that the Juettner opinions contained "no analysis of the history of the '109 patent" and could not, therefore, be relied on.[3] To make this finding, the district court had to have misunderstood the import of Mr. Juettner's June 10, 1980, opinion. That opinion states (emphasis added):

> The Drath patent 4,035,109 includes three independent claims, namely, claims 1, 15 and 16. While these claims vary greatly in scope, the variance occurs for the most part in the recitation of elements which are not relied on for novelty and which probably are common to many pumps of the general type. *The claims were allowed on the basis of the alleged novelty of the piston sealing-wiping means,* and it is this recitation of structure which appears to be most easily circumvented in order to avoid infringement.

Clearly, Juettner did consider the prosecution history. Juettner could not have known on what basis the claims were allowed without analyzing the patent file. As correctly explained by Binks's expert witness, Mr. Bernarr Pravel:

> I find in the body of the letter, there is a specific reference to the prosecution history of the '442. And on the second page of the letter, the reference to the '109 patent includes a statement, "the claims were allowed on the basis of the alleged novelty of the piston sealing-wiping means, and it is this recitation of structure which appears to be most easily circumvented in order to

avoid infringement." That indicates that there was an examination of the prosecution history of the '109 in order to have made that statement. It couldn't have been made without a reference to the prosecution history.

Thus, the court's factual premise for rejecting reliance on the June 10, 1980, letter was clearly erroneous.

■ Graco also argues that Binks could not have relied on Juettner's opinion in good faith because the opinion(s) did not discuss the validity of the '109 patent. The district court also noted this omission. This argument is specious. There is no requirement that an opinion *must* address validity to negate a finding of willful infringement. *Ortho Pharmaceutical,* 959 F.2d at 944, 22 USPQ2d at 1126 ("[C]ounsel's opinion must be thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, *or* unenforceable") (emphasis added); *Ryco, Inc. v. Ag–Bag Corp.,* 857 F.2d 1418, 1428, 8 USPQ2d 1323, 1331 (Fed. Cir.1988) ("The test is whether, under all the circumstances, a reasonable person would prudently conduct himself with any confidence that a court might hold the patent invalid *or* not infringed.") (emphasis added).

■ We see no basis for a conclusion that Binks could not have reasonably relied on Juettner's conclusion of noninfringement. The opinion was neither conclusory nor terse. To the contrary, the opinion provided a detailed infringement analysis. The conclusion appears well-supported and believable. That the district court disagreed with Juettner and concluded Binks did infringe does not render Juettner, or his opinion, incompetent. Whether or not an opinion was "legally" correct is not the proper focus. *Read Corp.,* 970 F.2d at 830, 23 USPQ2d at 1438 ("That counsel's opinion turned out to be contrary to our judgment with respect to the [asserted] patent does not make his advice regarding that patent incompetent."); *Ortho Pharmaceutical,* 959 F.2d at 944, 22 USPQ2d at 1126

---

3. The court found that an opinion of December 14, 1982, was the first that considered the history of the '109 patent.

("While an opinion of counsel letter is an important factor in determining the willfulness of infringement, its importance does not depend upon its legal correctness."). The district court thus erred in concluding that "the noninfringement opinions solicited by Binks before it manufactured Funny pumps were not adequate advice for Binks to rely justifiably."

The district court also found that "Binks ignored the advice of its attorneys, and it manufactured Funny pumps that it admits infringed." The court was correct that a small number of Model 450 and Model 1200 pumps were made without approval of counsel. However, the record indicates that this was due to carelessness or inadvertency by technical personnel, not disregard of patent rights by management. *Read Corp.,* 970 F.2d at 826, 23 USPQ2d at 1435 ("[T]his court has approved [enhanced damages] where the infringer acted in wanton disregard of the patentee's patent rights, that is, where the infringement is willful."); *American Medical Sys., Inc. v. Medical Eng'g Corp.,* 6 F.3d 1523, 1530, 28 USPQ2d 1321, 1325 (Fed.Cir.1993) ("A finding of willfulness requires the fact-finder to find that clear and convincing evidence shows 'that the infringer acted in disregard of the patent.'") (citing *Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1565, 219 USPQ 377, 378 (Fed.Cir.1983)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1647 (1994). Immediately after Graco filed suit, Binks consulted with their outside counsel, who reviewed the accused pumps. Counsel recommended discontinuing production of the Model 450 and Model 1200 pumps—which Binks did—and those sales were stipulated to be infringements prior to trial.

█ Stipulations serve a very useful function by helping to make the most efficient use of scarce judicial resources. A party may decide to stipulate a matter for a number of reasons, in some cases simply to focus the expenditure of that party's resources on what are believed to be those issues which seem the most economically important. Clearly, the discontinued Model 450 and 1200

pumps were a minor part of this litigation. The mere act of stipulating, while it may be considered a factor in a willfulness determination in appropriate circumstances, should not, and in this case cannot, be the sole basis for enhancement.

Respecting the Model D series of pumps, the current model, the court found no opinion of counsel at all exists. This finding is clearly erroneous. That Mr. Juettner was consulted is confirmed by his letter to Graco's counsel about two months before manufacturing began stating his opinions that the new Model D series, drawings of which were enclosed, did not infringe. Such conduct evidences good faith, not disregard of Graco's patent rights.

The nature, timing, and number of the contacts between Binks, Poly–Craft, and their counsel clearly shows that they were, from the start, concerned with acknowledging Graco's intellectual property and respecting its patent rights in both patents that were relevant. In isolation from the totality of circumstances, the manufacture of Model 450 and Model 1200 pumps might justify some increase in damages.[4] However, the totality of circumstances shows a good faith dispute over Binks's infringement, not intentional infringement.

Where an adjudged infringer acts with wanton disregard of a patentee's rights, enhancement is appropriate. Binks conduct in this case cannot be so characterized. For these reasons, we reverse the court's finding that Binks willfully infringed the '109 patent and hold that enhancement of damages was an abuse of discretion.

V.

*Exceptional Case*

█ Pursuant to 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." In determining whether to award fees, the court should undertake a two-step analysis. *J.P. Stevens Co. v. Lex Tex Ltd.,*

---

4. The amount of enhancement must bear some relationship to the level of culpability of the conduct.

822 F.2d 1047, 1050, 3 USPQ2d 1235, 1237 (Fed.Cir.1987) ("The district court must determine whether the case is 'exceptional'; if it is, then it is within the court's discretion to award attorneys' fees to the prevailing party."). A finding by a court that a case is exceptional is a factual determination, *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1128, 25 USPQ2d 1913, 1921 (Fed.Cir.) (whether a case is exceptional is a factual determination, and is reviewed for clear error), *cert. denied,* —— U.S. ——, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993), whereas the decision to award fees is discretionary. *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 629, 225 USPQ 634, 644 (Fed.Cir.) (awarding attorney's fees is within the discretion of the trial court), *cert. dismissed,* 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985).

The court's only discussion on the exceptional nature of this case is as follows:

> In exceptional cases, the court may award attorneys' fees to the prevailing party. 35 U.S.C. § 285. This case was exceptional warranting an award of attorney's fees to Graco.

This language was the last paragraph in a section titled "Binks' infringement was deliberate, warranting the treble damage." It thus appears that the court's conclusion that Binks willfully infringed also served as the basis for the finding that the case was exceptional. The Findings of Fact made by the court do not provide any other basis for its ruling.

We have, however, reversed the court's finding of willful infringement. As such, the court's finding that this case was exceptional must also be reversed, since the court provided no other factual findings to support the award. The court's award of attorney fees and expenses is therefore reversed. The issue of prejudgment interest on attorney fees is mooted.

## VI.

### *Conclusion*

Although likely not much consolation to the parties, we express regret in our decision to remand this case in view of the length of time proceedings have pended. Unfortunately, this case cannot be brought to closure. Further action by the district court is required. *Consolidated Aluminum,* 910 F.2d at 814, 15 USPQ2d at 1488 ("A remand, with its accompanying expenditure of additional judicial resources in a case thought to be completed, is a step not lightly taken and one that should be limited to cases in which further action must be taken by the district court in which the appellate court has no way open to it to affirm or reverse the district court's action under review.").

The case is remanded to the district court for findings on the best mode and infringement issues, and to redetermine the amount of prejudgment interest awarded. The court's findings that Binks willfully infringed the '109 patent and that the case was exceptional are reversed. Accordingly, the award of enhanced damages and attorney fees is vacated.

**REVERSED IN PART, VACATED IN PART, AND REMANDED.**

### *COSTS*

Each party shall bear its own costs.